## COURT OF APPEALS.

### MARY ANN SHIRLEY, Rspondent, agt. DANIEL VAIL, Executor, Appellant.

It is error to refuse to direct a verdict in cases where a finding contrary to the direction prayed for, would be set aside.

If the evidence is such that a verdict, finding the facts different from those claimed by the counsel in his request to the court to charge the jury, would be set aside as against evidence, the court errs in refusing to instruct the jury as requested.

*January Term,* 1870.

THIS action was brought by the plaintiff to recover compensation for work and labor performed by her for Christian Bennett, the defendant's testator during a period of more than nine years, commencing in April, 1852, ending in June, 1861.

The defendant, after a general denial of the allegations in the plaintiff's complaint, sets up as further defenses :

*First*—That the plaintiff when an infant, had by the consent and agreement of her father, been adopted by the said Christian Bennett as one of his children and taken by him into his family as a member thereof ; that the services rendered by her were so rendered in that relation and had been satisfied by her board, clothing, and education, and that no other compensation was to be made to her.

*Second*—The statute of limitations. 

A counter claim for goods sold and delivered by the testator to the plaintiff, and board, lodging, clothing, and the expenses of her education, was also interposed to which there was a reply containing a general denial.

The issues were tried at a circuit court held in Courtland

county in June, 1867, before Justice BOARDMAN and a jury.

The jury found a verdict for the plaintiff.

*By the Court:*—-GROVER, J.—The court did not err in over-ruling the objection of defendant's counsel to the introduction of the plaintiff as a witness in her own behalf. She was a competent witness in the cause, and it was proper for her to be sworn as such. The court, in overruling the objection, did not decide anything as to what testimony it was competent for the plaintiff to give, but only that she should be sworn as a witness in the cause. There was no objection made to any testimony given by the witness, nor any ruling made by the court upon the competency of any part of it. No question upon that point can be entertained by this court.

There was evidence given tending to show that plaintiff's father had abandoned all claim to her services while a minor. He had consented to her going to live in the family of defendant's testator when she was thirteen years old, and shortly after removed to Wisconsin, leaving the plaintiff in the family, and after she went there to live provided nothing for her, and took no care whatever of her (*Steel* agt. *Dorr*, 5 *Wend.*, 205, *and cases cited.*)

The motion for a non-suit being predicated upon the right of the father to recover for the services of the plaintiff, there was no error committed by its denial.

The defendant's counsel requested the court in substance, to instruct the jury that the plaintiff could not recover for the reason that she went to live with the testator as a member of hi family, to be provided for, brought up, and educated as such, and that this relation continued during all the time services were rendered by her for the testator.

The court refused to give the instruction requested, and the defendant's counsel excepted.

If the evidence was such that a verdict finding the facts different from those claimed by the counsel should be set aside as against evidence, the judge erred in refusing to instruct the jury as requested.

· It has been repeatedly held by the court, that it was error to refuse to direct a verdict in cases when a finding contrary to the direction prayed for would be set aside.

That the law is as was claimed by the counsel in his request upon the facts stated by him, has been repeatedly held by the supreme court, and settled by the determination of this court (*Williams* agt. *Hutchinson*, 3 *Coms.*, 312, *and cases cited.*)

The inquiry, therefore, is whether the evidence established the facts claimed by the defendant's counsel, or whether there was such conflict as rendered it proper to submit the case to the jury.

John C. Bennett, a son of the testator, testified, that in the fall of the year, that plaintiff came to live in the family of the testator, her father came to his (testator's) house, and while there had a conversation with testator as to plaintiff's living there. That the testator stated to him the terms; that she was to live there until of age, and that he was to take care of her as a member of his family; to send her to school, and care for her as a child; that her father assented to the terms, and said that was as he understood it, and desired her to remain as a member of the family.

It was proved that the plaintiff was about thirteen years old when she went to live in the family, and that from that time the testator and his wife had the exclusive care of her, provided all her clothing, sent her to school as farmer's daughters usually were sent, dressed her in similar style, and that upon her marriage she had a cow, bed and bedding and a box of clothing. That no accounts were ever kept by the testator with the plaintiff, or so far as appeared by the plaintiff with him. That the testator lived upward of four years after the plaintiff's marriage, and after she left the family to reside with her husband, and that no claim against the testator for her services was made by the plaintiff during his life; and for some time after.

This proof was met by the plaintiff's proof that at the

time the testator took her from her aunt's, with whom she was then living, to go and live with him, he said he would do well by her; and that he said to his neighbors several times while the plaintiff was living with him; that the plaintiff was a good girl to work; that he did not know how he could get along without her, and that he would pay her well; facts, I think quite, if not more consistent with the defendant's theory than that of the plaintiff.

The evidence that plaintiff milked and sometimes drove the cows to and from pasture, a distance of about thirty rods, occasionally fed calves that the testator was raising and sometimes fed hogs, furnished no evidence that the testator expected to pay, or the plaintiff to receive wages as a servant to any mind acquainted with the services frequently performed by farmers' daughters in the country.

The testator's wife handing the plaintiff ten dollars about the time of her marriage, coupled with the remarks that she would pay her more, but that that was all she had then, was not evidence against the defendant, as there was no proof that the testator was present.

The testimony of plaintiff's husband, that the testator let plaintiff have a heifer, and said she would make a good cow, and that he said he let her have the cow for twenty dollars, but she must pay for her keeping, &c., was to my mind no more evidence of an understanding that plaintiff was at work for wages, and that the cow was delivered as partial payment, than it was of an existing demand of the testator against the plaintiff for the cow.

An examination of the testimony satisfies my mind that there was no evidence really in conflict with the strong proof of the defendant's, tending to show that plaintiff lived with the testator, and was provided and cared for by him and his wife as a member of the family, without any idea of paying or receiving wages otherwise, and that the judge erred in not instructing the jury as requested by the defendant.

The judgment should therefore, be reversed, and a new trial ordered, costs to abide event.

LOTT, J. (*Dissenting.*)—Exceptions taken during the progress of the trial and to the refusal of the judge to charge as requested by the defendant's counsel on certain propositions submitted to him, were directed to be heard in the first instance at the general term, and on being so heard, judgment was rendered against the defendant from which he has appealed to this court.

It then becomes necessary, to consider whether any of those exceptions were well founded, and they will be briefly examined in the order they were taken.

*First*—The plaintiff had on the 27th day of December, 1860, and previous to leaving the family of the deceased, married William Shirley, and he on being called and offered as a witness on her behalf, was objected to " on account of incompetency." This objection was overruled, and properly.

It is declared by chapter 887 of the laws of 1867, passed May 10th, and which took effect immediately, that the husband or wife of any party to a suit, action, or proceeding in any court, shall be " competent and compellable to give evidence the same as any other witness on behalf of any party to such suit, action or proceeding," except in certain cases having no application to this action.

*Second*—The plaintiff was offered as a witness on her own behalf, and she was objected to " as incompetent to testify to any conversations or transactions with the deceased Bennett." This objection was also properly overruled. It was too broad, embracing not only conversations and transactions had by the witness herself with the deceased, but by any other person. Section 399 of the Code excluded her examination " in regard to any transaction or communication between such witness and a person at the time of such communication with deceased," &c.

If, however, the objection may be considered as sufficiently distinctive, the error in overruling it was immaterial. No evidence in reference to any transaction or communication between the plaintiff and the deceased was given. The exception to the ruling is, therefore, no ground for the reversal of the judgment.

*Third*—When the plaintiff rested, the defendant's counsel moved that the plaintiff be non-suited, upon the ground (as then stated by him) " that she has a father living, and that he was living at the time she went into these services, and was living during her whole minority, and that there is nothing to show that he had given her the privilege of taking her wages, and that a recovery by he plaintiff would be no bar to an action by the father, and that during the time she was a married woman her husband was entitled to recover, and that she did not carry on a separate business." The motion was denied, and the defendant's counsel duly excepted.

The defendant then introduced evidence on his part, and further proof was afterward also given by the plaintiff; and when the testimony was closed, the defendant again moved for a non-suit, " on the same grounds as on plaintiff's resting her case." This motion was also denied, and the defendant again excepted.

These exceptions may properly be considered together. In doing this it is important to take into consideration the time when the services in question were rendered, and the situation of the plaintiff during that period.

It was admitted on the trial that she "went to reside with Bennett in April, 1852; was married in December, 1860, and left there in June, 1861." She states that she was about twelve years of age when she became a member of the family of the deceased, and she testified that she was twenty-eight years old in January before the time of the trial, 1867, making the time of her birth in January, 1839, and her husband fixed the time her marriage on the 27th day

of December, 1860. It will thus be seen that she was a
little over thirteen years of age when she first went to reside
with the deceased ; that she attained the age of twenty-
one years in January, 1860, and continued to live with him
for nearly a year after that before her marriage.    The
ground of objection to a recovery did not cover that inter-
mediate period, and therefore the motion for a non-suit could
not properly have been granted.

I will, however, add that the assumption of the defend-
ant's counsel, as a ground of his motion " that there is
nothing to show that he (the father) had given the plaintiff
the privilege of taking her wages, would be no bar to an ac-
tion by her father," was not authorized by the facts dis-
closed.    It appeared by the testimony introduced on behalf
of the plaintiff before she rested her case, that she had
lived with the deceased, and worked for him from sometime
in April, 1852, to June, 1861, as above stated, and she tes-
tified that her father went west in about two years after
she went to reside with Mr. and Mrs. Bennett ; that he had
been back to visit them since, and came and conversed with
Mr. and Mrs. Bennett ;  that he never said anything about
or controlled her wages ; and that he had not provided for
her since she went to live with them.

The court upon that evidence properly ruled that there
was sufficient in the case to make it a question of fact for
the jury to pass upon.

The testimony subsequently given on the part of the de-
fendant was offered with the view and object of showing
that the deceased had adopted the plaintiff, and taken her
into his family as his child, with an obligation on his part to
support, clothe, and educate her as such child.    It is doubt-
ful, however, whether it establishes that fact, or whether it
did not on the contrary show, as claimed by the plaintiff,
that her father had in fact emancipated her, or permitted
her to go into the service of the deceased, under such cir-
cumstances as to give her the right to receive compensation

for her services, to the exclusion of the father's right thereto.

It, in any aspect of the case, proved that the father himself was not to receive any compensation for her services.

In view of these facts, the motions for nonsuit were each of them properly denied.

*Fourth*—The defendant's counsel, after the decision of those motions, "then submitted to the court that there were no facts in the case on which to go to the jury," insisting "that the family relation existing here between the plaintiff and Bennett, that she lived in that relation, and that relation continued during the entire service, and consequently no action could be sustained by any body, and that as a question of law, the court should charge the jury that their verdict should be for the defendant;" but the court decided that there were facts in the case which warranted him in submitting to the jury the question as to whether the relation of parent and child existed between these parties."

To which ruling the defendant excepted. It is only necessary, in reference to this exception, to say that the testimony referred to by me for the purpose of showing that the nonsuit was properly refused also shows that this ruling was proper. It did not prove as an indisputable fact that such relation existed, and the court would not have been warranted in ordering a verdict for the defendant.

*Fifth*—The other exception relates to the refusal of the court to charge the jury, as requested by the defendant's counsel, upon certain propositions submitted to him after he had charged them fully on the rules of law deemed by him applicable to the case, and to which charge no exceptions were taken. These refusals will now be considered.

*First.*—The court was asked to charge, "That if the jury found the fact that the relation of parent and child existed between the plaintiff and the defendant's testator, or that she was taken by the testator to become a member of

his family, and was brought up by him as such, then they should find for the defendant," which he refused, except as charged already.

The charge bearing on that question was that if the plaintiff and her father understood by the arrangement with the defendant's testator that she was to go there as an adopted child, and was to go into his family in that capacity, and remain there until she was twenty-one as such adopted child, without pay or expectation of pay for her services, or only to be paid by the treatment as a daughter, or adopted daughter, then she would not be entitled to recover up to a period prior to her arriving at the age of twenty-one, neither she nor her father, and then after referring to some matters, he also stated that it was for the jury to say, from the evidence in the case, whether there was an adoption of the plaintiff by Bennett, in which case he said that she was " not entitled to recover back of the time when she became twenty-one years of age."

This was as favorable to the defendant as he had a right to ask, and was substantially as requested by his counsel, except as to the time after the plaintiff became of age. If either of the facts embraced in the request was true, the plaintiff would not thereby have been precluded from a recovery for her services after she attained full age.

The refusal to charge, as requested, was therefore not erroneous.

*Second.*—The court was also then asked to charge " that the proof offered by the plaintiff that the testator (Bennett) said he would pay her (the plaintiff) well for her services, is neither a contract or agreement upon which the plaintiff is entitled to recover in this case," and the court charged " that it was only evidence from which a contract may be inferred, as already charged," and the defendant duly excepted.

That ruling was a compliance with the request as made, and there was no error in the charge in reference to it.

Shirley agt. Vail.

The statement referred to in the request was made by the testator to one of the witnesses after the plaintiff had gone to live with him, and was proper to be considered as evidence by the jury from which a contract could be inferred, as stated in the charge.

*Third.*—The court was also asked to charge " that the statute of limitations is a bar to a recovery in this case, and that in order to save the plaintiff's claim from the running of the statute, the plaintiff must show that a mutual running account existed between them." The court refused so to charge except as already charged.

This proposition was clearly erroneous. The action was commenced on the 13th day of August, 1866, and it is a conceded fact that a portion of the services rendered were performed between the 13th day of August, 1860, and June, 1861.

The statute of limitations was clearly no bar to a recovery for those services. It was not necessary to save the plaintiff's claim from the statute that there should be a mutual running account. An acknowledgement of the debt, or a promise, if made in writing, or a payment on account of it would be sufficient, and the court had given instructions as to the effect of a payment, and what was necessary to make it a recognition of a debt as subsisting before the request was made.

*Fourth.*—The next request to charge was, "that if the plaintiff is entitled to recover at all, it must be under a contract for her services, and a special promise on the part of the testator to pay therefor, and that the plaintiff cannot recover upon the counts in the complaint, but must aver and prove a special promise to pay for the services rendered." This was properly refused. A special promise to pay for services rendered was not necessary to maintain the action.

The plaintiff was entitled to a fair and reasonable compensation for all services rendered by her to the testa-

tor at his request. The law implies a promise to pay for work done on such a request what they are reasonably worth.

*Fifth*—The last and only remaining request was, "that the jury had no right to imply the emancipation of the plaintiff by the father without evidence thereof, and especially against the evidence of the arrangement made by the father with the defendant's testator, for her care and support, there being no evidence of the revocation of that arrangement by the father," and "the court refused to charge in the language of that proposition." That refusal was proper. It assumed that there was no evidence of such emancipation, but that a definite and certain arrangement for her care and support had been made, establishing the contrary. Neither assumption was warranted. Those questions were left in doubt by the testimony, and were properly submitted, as has heretofore been stated, to the decision of the jury.

It may be proper here to notice, that the appeal of the defendant to this court is from the order of the general term, denying a new trial on the case and exceptions, as well as from the judgment.

That order was made on exceptions ordered, as before stated, to be heard in the first instance at the general term, under section 265 of the Code, and it is reviewable only so far as it involves and necessarily affects the final judgment on the appeal therefrom (*Section* 11 *of the Code*).

The appeal from the order should therefore be dismissed, and the views above expressed lead us to the conclusion that the judgment should be affirmed, with costs.